# FRANK A. WAY v. JONATHAN POWERS AND ABNER H. POWERS.

## Negligence.  Master.  Servant.

The relation of the defendants was that of father and son.  The son was twenty-eight years old, and, while living with his father as a hired man on his farm, took his father's horse and drove three miles to the railroad depot to get one of his own friends.  The father did not know that the son took the horse until after he was gone; but expected and was willing that he should do so.  The son had driven the team before without permission.  The horse, tied to a post in the rear of the depot, where the defendants were accustomed to hitch, broke away, ran into the plaintiff's team, and injured him.  The referee found that the son in tying the horse "did not exercise the prudence of an average prudent man"; *Held*, that the father was not liable, but that the son was; that license to use the horse could not be inferred from the fact of former use without leave.

CASE for negligence.  Heard on a referee's report, December Term, 1883, Caledonia County, Ross, J., presiding.

Judgment for the plaintiff against Abner H. Powers; but judgment that Jonathan Powers recover his costs.  The referee found in part:

"This rope halter was large and very strong, and had been in use by the defendants.  Its manner of use was by tying a knot in the end, putting it around the neck of the horse, and slipping this knot through a loop in the rope close to the neck, so the rope could not slip over the head; and if this was properly done, and the rope securely tied at the other end, a horse so hitched could not get away.  After the train came in Abner went for his team, and found the horse had broken away and was running up the road towards where the accident happened.  He testified that the horse broke away by reason of the knot in the end of the rope untying, and so letting the end slip through the loop.  If the horse was tied with the rope produced, and as described by Abner, it could not have got away if the end knot had been properly tied.  The knot was probably then as it had been for some time before; but its defect consisted, as I

think, in its being made too near the end of the rope, and it was worked out and untied by the horse pulling back and forth upon it, according to its habit, as above described. Abner knew the character and habits of this horse when separated from its mate, and when around or near the cars. He thought the horse was securely tied.

"In view of the habits of this horse when separated from its mate, and left hitched alone so long, and when near the cars, all known to Abner, and of all the circumstances then existing, I find that Abner did not exercise the prudence of an average prudent man in using that rope with said defectively tied knot in the end, or, in other words, in not seeing that the knot was suitably and properly tied. * * * *

"His father knew that he was expecting his friend about that time, but did not know that he took the team that evening until after he had gone, and had given no permission to take it, but expected he would take it, and was willing he should, when his friend should come. He had no business for his father that evening, and no other business than to go for his friend."

*Belden & Ide* and *Stafford*, for the plaintiff.

Abner H. Powers is clearly liable. *Hadley* v. *Cross*, 34 Vt. 586; *Briggs* v. *Taylor*, 28 Vt. 184. The father is liable as the master of Abner. Story Ag. s. 453; Whar. Neg. s. 168.

It is to be observed that wherever the general statement is found that, "where the servant departs from the performance of his master's business and undertakes to do something on his own account *though with the master's materials*, the master ceases to be responsible for the servant's negligence," the phrase, "though with the master's materials," is invariably qualified by the additional phrase "*unlawfully taken*," or, "taken *without the master's consent.*" Whar. Neg. s. 168; *Joel* v. *Morrison*, 6 C. & P. 501; *Sleath* v. *Wilson*, 9 C. & P. 607; *Welch* v. *Lawrence*, 2 Chit. 262. But Jonathan Powers is liable on other and more general principles. The halter had been in the same untrustworthy

condition for a long time. This the master knew, or was bound to know. ALDERSON, B., in *Blythe* v. *Birmingham Water Works Co.* 11 Exch. 784; 3 Sneed (Tenn.) 677. He was bound to anticipate any injury that naturally might, and especially the injury that actually did, flow from it. *Railroad Company* v. *Stout,* 17 Wall. 657; Whar. Neg. s. s. 112, 860; DENMAN, Ch. J., in *Lynch* v. *Nurdin,* 1 A. & E. 29; TINDAL, Ch. J., in *Illidge* v. *Goodwin,* 5 C. & P. 190; *Mc-Donald* v. *Snelling,* 14 Allen, 290.

*A. M. Dickey* and *Edwards, Dickerman & Young,* for the defendants.

The judgment in favor of Jonathan Powers should be affirmed. *Andrus* v. *Howard,* 36 Vt. 248. The master is not liable for the acts of his servant while not engaged in the master's business. *Wilson* v. *Peverly,* 2 N. H. 548; *Mc-Manus* v. *Crickett,* 1 East, 105; 1 Bl. Com. 429. The damage must be done while he is employed in his master's service. 1 Bl. Com. 431; *Ellis* v. *Turner,* 8 D. & E. 531; *Foster* v. *Essex Bank,* 17 Mass. 479; *Howe* v. *Newmarch,* 12 Allen, 49; *The Mechanic's Bank* v. *The Bank of Columbia,* 5 Wheat. 326. To render the master liable, it must be shown that the servant was acting under the authority of the master. *Church* v. *Mansfield,* 20 Conn. 287.

If a servant take his master's cart without leave, and drive it about solely for his own purposes, the master will not be answerable for any injury he may do. 25 E. C. L. 546; *Mitchell* v. *Crassweller,* 76 E. C. L. 235.

The act of the servant is not the act of the master, even in legal intendment or effect, unless the master previously directs or subsequently adopts it. *Parsons* v. *Winchell,* 5 Cush. 593; *Vose* v. *Grant,* 15 Mass. 505, 521: *Merryweather* v. *Nixon,* 8 Term, 186; *Mulchy* v. *Meth. Religious Society,* 125 Mass. 489.

The judgment should be reversed as to Abner H.; for the reason that the referee has not found that he was *negligent.*

The opinion of the court was delivered by

ROYCE, Ch. J.   This action was brought to recover compensation for injuries to the plaintiff's person and property occasioned by the alleged negligence of the defendants.

It is found, that the defendant, Jonathan Powers, was the owner of two horses, and the defendant, Abner, who was his son and hired man, drove them as he had occasion for private driving, without special permission of his father. On the 19th day of May, 1879, Abner, who was expecting a friend to make him a visit at his father's home, took one of said horses and an open wagon, without the permission of his father, and drove them to the depot at West Burke to meet his friend.   His father did not know he had gone until he had been absent some time; but expected and was willing he should take the team to bring his friend from the depot, when he should need it for that purpose.   Abner arrived at the depot more than an hour before the arrival of the train, and hitched the horse in as secure a place as there was around the depot, and at the usual place for the defendants to hitch.   The horse was restive and pulling upon his halter, which was noticed once at least by Abner.   He finally broke loose and ran into the team of the plaintiff, thereby causing the injuries to him, which are sought to be recovered for.

The horse broke away in consequence of a defect in the rope with which he was tied.   The defect consisted in the knot in the end of the rope being too near the end of it, so that it worked out and was untied by the continual pulling of the horse.   In all other respects it was suitable and sufficient.   And it is found that Abner did not exercise the prudence of an average prudent man in using the rope with said defectively tied knot in the end; or, in other words, in not seeing that the knot was suitably and properly tied.

It is clear that the defendant Abner is liable; for it is found that the damage to the plaintiff resulted from his negligence in using the defective rope in tying the horse.

Abner was not at the time in the employment of his master, nor acting upon his business. He took the horse, as we have seen, without the permission or knowledge of Jonathan Powers. And no license to take him could be inferred from the fact that he had used him upon his own business upon previous occasions without leave. Abner was not entrusted by his master with the horse and carriage; and so his master is not brought within the rule of liability that has been held to apply in the cases to which we have been referred by the counsel for the plaintiff. If Jonathan Powers should be held liable, upon the facts found, it would, in legal effect, be holding him responsible for the damage resulting from the use of a defective article owned by him, when the use was without his permission or knowledge.

The judgment is affirmed.