# Carl Corper Brewing & Malting Co. v. Eliza Huggins.

1. MASTER AND SERVANT—*Liability of the Master for the Negligence of the Servant Outside of the Scope of his Employment.*—A master can not be held to respond for the negligent acts of his servant, done outside of the scope of his employment. But if the negligent act is done by the servant while engaged directly or indirectly in the master's business, the liability of the master is not to be avoided on the ground alone, that the servant has, for purposes of his own, chosen a method less direct than he might have selected for the work.

2. SAME—*Where the Servant is Allowed to Combine His Own Business with that of His Master.*—Where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, and a third person is injured by his negligence, the master will be responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury.

3. SAME—*Where the Servant is Doing His Master's Business in a Devious Manner.*—The law is well settled that while the servant is doing his master's errand, his doing of it in a devious and dilatory manner does not make it any the less his master's business.

4. SAME—*Where the Servant Owns the Conveyance Which He Uses in His Master's Business.*—The fact that a servant owns the horse and buggy which, with his master's assent, he uses in his service, is no reason for distinguishing the case from others where the master is the owner.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1900. Reversed. Opinion filed July 18, 1901.

**Statement.**—This suit was brought by appellee to recover damages for personal injuries sustained, it is claimed, through negligence of appellant. Appellee, while crossing a public street in the city of Chicago, was run down and injured by a horse and buggy driven by one Herrold.

Appellant was engaged in the brewery business and employed Herrold to solicit customers for its beer. This service took Herrold over all parts of the south division of the city of Chicago. In performing this service he used a horse and buggy which belonged to him and not to his employer.

Carl Corper Brewing & Malting Co. v. Huggins.

On the day in question Herrold drove his horse and buggy to the brewery.   He went into the private office of the president and asked for "a day off," saying that he wanted to move and wished to examine a flat into which he contemplated moving.   Corper, the president, said that he could have "a day off."   Herrold left Corper's office and started out of the brewery, and as he did so, passed the bookkeeper's window.   To the latter he said that he was going to take a day off.   As he was going out of the door, the bookkeeper, Illing, called him back and asked him if he were going down town, and said if he was, he would like to have him get some beer stamps.   The man who usually got the beer stamps was not at the brewery that day, and it would appear that the duty of getting the stamps would have fallen upon Illing had not Herrold been willing to get them.   Illing told Herrold that it would be all right to bring the stamps with him when he came down the next morning, and Herrold agreed to get the stamps.   Thereupon Illing made out a check to pay for the stamps, had Corper, the president, signed it, and gave the check to Herrold.

Herrold left the brewery about 9:30 o'clock in the morning.   He drove down town, went to a bank and got the check cashed; then went to the internal revenue office and bought the stamps.   The value of the stamps was nearly $500.   Herrold put the stamps in his pocket, and then drove to a wine room kept by one Newberger, on LaSalle street.   Herrold stayed in the wine room from about 11 A. M. to 2:30 P. M., drinking wine with Newberger.   The latter was a friend of Herrold's; he was not a customer of the defendant, nor had he ever been, nor has he since become a customer.   From Newberger's place Herrold started home.   About 3 o'clock, as he was crossing Wabash avenue, going east on Adams street, the collision with the appellee occurred.   Herrold had the stamps in his pocket at the time of the accident; his intention was to deliver them the next morning at the brewery.

These facts were disclosed through the testimony of Her-

rold, called as a witness by appellee. At the time of the trial he was still in the employ of appellant and was afterward called as a witness for appellant in its defense. When testifying as a witness called by appellant, Herrold stated that Illing had requested him to get the stamps as a favor to him, but when narrating the circumstances of leaving the brewery on the day in question upon his examination by appellee, he did not include any such statement in his narrative. No witness other than Herrold testified on behalf of either litigant as to the conduct of Herrold and the order given him as to the stamps.

At the conclusion of the appellee's evidence the appellant requested the court to instruct the jury peremptorily to return a verdict of not guilty. This request was denied and the instruction tendered was marked refused. The issues were submitted to the jury, with appropriate instructions as to the law governing, and a general verdict of guilty was returned and appellee's damages were assessed at $2,200. From judgment upon the verdict this appeal is prosecuted.

LACKNER, BUTZ & MILLER, attorneys for appellant.

FRANCIS J. WOOLLEY, attorney for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

In presenting this appeal, counsel for the appellant waive all questions of procedure, and any question as to the amount of the recovery. The instructions given by the learned trial court to the jury are conceded to be correct statements of the law, except that it is urged that the court erred in declining to peremptorily direct a verdict for appellant.

The one contention presented is that upon the evidence there can be no recovery, for the reason that the evidence fails to show, it is claimed, that when Herrold negligently drove the horse and buggy so as to injure appellee, he was engaged in the service of appellant and working within the scope of his employment.

It is conceded that the evidence establishes that Herrold was at the time under the influence of ·liquor, and that his negligence caused the injury. It is simply contended that his negligence was not the negligence of the appellant.

The rule of law governing is more difficult to apply than to define. The master is not to be held to respond for the negligent acts of the servant done outside of the scope of the master's business and the servant's employment. But if the negligent act be done by the servant while engaged directly or indirectly in the master's business, liability of the master is not to be avoided on the ground alone that the servant has, for purposes of his own, chosen a method less direct than he might have selected for the work. Chicago C. B. Co. v. McGinnis, 86 Ill. App. 38, and cases therein cited.

Nor does the fact that the servant is combining his own business with that of the master necessarily relieve the latter from liability. The rule is well stated by the authors in 1 Shearman and Redfield on Negligence (4th Ed.), Sec. 147, as follows:

" Where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in, when a third person was injured by his negligence; but the master will be held responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury."

In the application of the rule to cases where a servant in driving has caused injury to another, a variety of decisions may be found. Those which tend most strongly to support the contention of appellant and which are cases where, under the facts there presented, it was held that the master was not liable, are: Rayner v. Mitchell, L. R. 2 C. P. 357; Story v. Ashton, L. R. 4 Q. B. 476; Mitchell v. Crassweller, L. R. 13 C. B. 237; Cavanagh v. Dinsmore, 12 Hun, 465; Way v. Powers, 57 Vt. 135; Stone v. Hills, 45 Conn. 44.

While decisions supporting to some extent the contention

of appellee, and holding in the several instances that there was or might be a liability of the master, are : Cormack v. Digby, 9 Irish Rep., C. L. S., 557; Patten v. Rea, L. R. 2 C. B. N. S. 605; Goodman v. Kennell, 1 Moore & P. 241; Whatman v. Pearson, L. R. 3 C. P. 422; Joel v. Morrison, 6 Carr. & P. 501; Sleath v. Wilson, 9 Carr. & P. 607; Ritchie v. Waller, 63 Conn. 155; Kimball v. Cushman, 103 Mass. 194.

These various decisions, however, can not be said to conflict as to the rule of law controlling, but are merely applications of the rule to different circumstances. From them all, there is deducible the rule, now well established, as announced by Shearman and Redfield, and above quoted.

Applying the rule to the facts of this case, the question presented is, does the evidence sufficiently tend to establish the fact that Herrold, when he negligently injured the appellee, was so far engaged in the employment of his master as to make the latter liable for his negligent act? The majority of the court are of opinion that the evidence is insufficient in this behalf, and therefore that the learned trial court erred in refusing to direct a verdict for the appellant. The majority of the court base this conclusion of fact upon the circumstances that Herrold, and not appellant, owned the horse and buggy; that Herrold had asked and obtained release from his regular employment upon the day of the injury; that his regular service did not include the going upon errands for revenue stamps; that the request to get the stamps upon this day came from the bookkeeper, Illing, and was designated by Herrold, when testifying, as having been done as a favor to Illing; that after having obtained the stamps Herrold went to a saloon, where he remained upon his own business for several hours, and evidently until he had become intoxicated, and that he was upon his way to his own home, and not to the brewery of his employer, when the injury was caused, and that Herrold was not directed to deliver the stamps until the next day. But the writer is of opinion that all these evidentiary facts, together with other facts disclosed by

the evidence, were properly submitted to a jury, and that it was within their province, and not that of the court, to determine whether they together established the ultimate fact of Herrold's being in the service of appellant when the injury was done—*i. e.*, that Herrold's negligence was the negligence of appellant.   The fact that Herrold had asked for "a day off" was to be considered by the jury, with the other fact that, together with the granting of it, he was requested to obtain the stamps. It did not matter whether Illing or some other representative of the company imposed the condition, for Herrold accepted the order and obeyed it.   Evidence in the record, but not abstracted, discloses that Herrold had at times before in the course of his service been sent upon like errands for revenue stamps.   It could hardly be contended that while going for the stamps Herrold had turned away from the service of the master, and was engaged solely in his own affairs.   The fact that after having obtained the stamps he went to a saloon and remained there for some hours, instead of returning promptly with the stamps, does not operate as a complete departure from the service.   The law is well settled that while the servant is doing the master's errand, his doing of it in a devious and dilatory manner does not make it any less the master's business.   C. C. B. Co. v. McGinnis, *supra*, and cases therein cited.

Nor does the fact that he was taking the stamps to his home to keep them over night, instead of to the brewery, make the trip altogether the individual business of the servant.   According to his testimony, he had undertaken to get the stamps and keep them until the next morning.

The ownership of the horse and buggy presents a more difficult question.   Many of the decisions wherein a liability of the master has been held to be established in like cases, are in instances where the master has been the owner of the wagon or carriage which was negligently driven, and in some of them the very fact of the ownership is made the basis of liability; but where the conveyance is used about the master's business, and with his general knowl-

edge of such use, it would seem upon principle, and it is held upon good authority, that there is no reason for distinguishing from cases where the master is the owner. It is, after all, the use of the conveyance in the employer's business, and with his assent, which determines the liability, not title to the property.

In Patten v. Rea, L. R., 2 C. B. N. S. 605, facts somewhat like to the facts here are presented. There, as here, the servant owned the conveyance, which was used in the master's business. In that case the defendant's agent, Taylor, was driving his own horse and gig for the primary purpose of calling upon his own medical attendant, but proposed, with the knowledge of the defendant, though without any command from him, to stop on his way back upon business for the defendant. While on his way Taylor negligently ran against the plaintiff's horse. It was held that the defendant, the employer of Taylor, was liable for the injury.

The Patten case is stronger for a recovery, in that the horse owned by the servant was kept at the expense of the master, and the master knew that the servant was to use it upon the occasion in question.

But here the evidence fairly warrants the conclusion that appellant's officers knew that Herrold used his horse and buggy in appellant's business. His work made such use necessary. His work took him all over the south division of the city, so he testified, and he used the conveyance in those business trips. In the Patten case, Cockburn, C. J., said :

" The contention on the part of the defendant at the trial was that he was not responsible for the damage, because the horse and gig were the property of Taylor, and because there was no evidence of any express command from the defendant to Taylor to use the horse and gig upon the occasion in question. I think the former part of the argument is met by the fact that the horse and gig were kept by the defendant free of charge to Taylor, and were ordinarily used by him in the performance of journeys about his master's business," etc.

This decision has been long accepted as a well considered case, and it is relied upon by Shearman and Redfield and

Smith in their treatises upon the law of negligence and of master and servant. 1 Shearman and Redfield on Neg. (4th Ed.), Sec. 147; Smith on Master and Servant, star page 338.

In Goodman v. Kennell, *supra*, the servant was using a horse, not the property of either master or servant, yet the court held that inasmuch as the facts warranted the jury in concluding that the horse was used by the servant in the business of the master, with the assent of the master, the negligent use of the horse by the servant imposed a liability upon the master.

In cases similar to this, the question of whether the servant was or was not acting in the service of the master when the negligent act was done, has been always treated by the courts as primarily a question of fact and not a question of law, except where there was no evidence fairly tending to establish the liability.

In the cases of Rayner v. Mitchell, *supra*, and Mitchell v. Crassweller, *supra*, the possession of the master's conveyance by the servant was wrongful, and this was the basis of the decisions in these cases. In Way v. Powers, *supra*, and Stone v. Hills, *supra*, and Cavanagh v. Densmore, *supra*, there was no evidence to show that the servant was, at the time in question, engaged in any business of the master.

In the following, among many cases, the like question is held to be a matter for the determination of a jury: Cormack v. Digby, *supra;* Sleuth v. Wilson, *supra;* Patten v. Rae, *supra;* Goodman v. Kennell, *supra;* Whatman v. Pearson, *supra;* Joel v. Morrison, *supra;* Ritchie v. Waller, *supra;* Kimball v. Cushman, *supra.*

It would be difficult, in the opinion of the writer, to find any reported case, where trial by jury was had, where the evidence tended, as it does here, to establish the fact necessary to a recovery, wherein it has been held that the question of the establishment of such fact was a question primarily for the court and not for the jury. The learned trial court held that the evidence warranted the finding of fact made by the jury in their general verdict. Reasonable

minds might fairly differ as to the conclusion.    Therefore, measured by the decision in The Chicago & N. W. R. R. Co. v. Hansen, 166 Ill. 623, the question was, in the opinion of the writer, properly submitted to the jury, and the trial court did not err in denying the motion of appellant to peremptorily direct a verdict for it.    It is, however, the opinion of a majority of the court that the evidence fails to establish that Herrold at the time of the injury was engaged in the work of his employer, appellant, and therefore the judgment is reversed.