### G. A. Hills v. J. H. Strong, Administrator.

#### Gen. No. 13,175.

1. MASTER AND SERVANT—*when relation of, must exist to sustain liability for negligence in driving of team.* Negligence in the driving of a team and liability for the effect of such negligence can only be cast upon the servant actually guilty of the negligence or upon his master.

2. MASTER—*who is, in law.* In law the master is he who has the supreme choice, control and direction of the servant and whose will the servant represents, not merely in the ultimate result of his work but in all its details.

3. MASTER—*when not liable for negligence in driving wagon.* Where the servant in charge of a team, for his own convenience turns it over to another, and such other is guilty of negligence, the master is not liable.

4. PEREMPTORY INSTRUCTION—*what does not waive motion for.* A motion for a peremptory instruction is not waived by going to the jury on the merits.

Action in case for death caused by wrongful act. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1906. Reversed. Opinion filed April 4, 1907.

F. H. TRUDE, for appellant.

L. J. DELSON, for appellee; ODE L. RANKIN, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

The appellee, as administrator of the estate of Nathan Hirshovitz, deceased, a minor of about the age of ten years, sued appellant and others for damages, claiming that the defendant caused the death of his said intestate by negligence in driving a wagon. On the trial the cause was dismissed as to all defendants except Hills.

The declaration is in the usual form in case of negligent driving, and avers that, by reason of the negligence of the defendant, in driving a two-horse team attached to a truck wagon, to wit, September 13, 1902, the wagon ran over the deceased, causing his death the same day. The defendant Hills was engaged in the teaming business and did teaming exclusively for the Samuel Cupples' Woodenware Company. Joseph Konieczka, a driver of nearly eighteen years' experience in driving teams, whose competency as a driver is not questioned, was in defendant's employ, and had charge of a two-horse team of the defendant, which, when in use, was attached to a wagon the bed of which was fourteen feet in length, its width eight feet from hub to hub, and its length 25 feet, including the length of the pole. It weighed empty 3,600 pounds. The duties of Konieczka were to haul merchandise, with the team and wagon described, from the warehouse of the Samuel Cupples' Woodenware Co. to the freighthouse of the Chicago & Northwestern Railroad Co. His duty was to drive to the warehouse of that company in the morning every day, load up the wagon there and drive it, when loaded, to the railroad freighthouse and there unload it and return to the Woodenware Co.'s warehouse for another load, and to so continue to do through the day and from day to day. On the morning of September 13, 1902, he drove to the warehouse of the Samuel Cupples' Woodenware Co., loaded the wagon and started for the railroad freight house at 16th and Meager streets. Before that day

he had been arrested for beating a man who, or whose wife, he says, had called his wife vile names, and the case had been continued from time to time at the Maxwell street police station, and was the first case to be called that morning. So, when he arrived at the corner of 16th and Jefferson streets, which was near the railroad freight house, he met three boys, one of whom was Joseph Cmucha, and asked Joseph if he would do him a favor, saying to him that his case was coming up at the Maxwell street station, that he would be through with it about 9:30 o'clock, and asked Cmucha to go with him to the freight house and take care of the team and unload the wagon, and then to go down Union street to Maxwell street, and on the latter street to the police station, and if he should not meet him on the way, to leave the team at the station. He told Cmucha that the next night was his pay night, and he would make it all right with him. Cmucha said he was not doing anything that day, and he would accommodate him. Thereupon, Cmucha and the other two boys went with Konieczka to the freight house, where he left them. When the boys had unloaded the wagon, which took about an hour and a half, John Blaha, one of the three boys, said he had a letter for the Western Electric Co., at the corner of Congress and Jefferson streets, and asked Cmucha to take him there, which the latter agreed to do, and started for the corner of Congress and Jefferson streets. While they were on the way there, and as they turned at the corner from Wilson street onto Clinton street, the pole of the wagon came in contact with the plaintiff's intestate, threw him down, and the wheels of the wagon ran over him and killed him. These facts are uncontroverted.

The defendant's barn is at Canal street near Sixteenth street. The Maxwell street police station is on the north side of Maxwell street. The Western Electric Co. is situated as heretofore stated, and is as much as thirteen blocks north of the Maxwell street police station, and five blocks east of it.

The relation of master and servant must exist in order to make the defendant liable. "He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details." 1 Shearman & Redfield on Neg., 4th ed., p. 267, sec. 160; Pioneer Construction Co. v. Hansen, 176 Ill. 100-108. And unless the relation of master and servant exists between the person guilty of negligence and the defendant, the latter is not liable. In 1 Thompson on Negligence, p. 201, sec. 13, the author says: "Relation of master and servant must exist. In any case of this kind, the relation of master and servant must be established, to hold the defendant liable. Thus, where the defendant, who was the buyer of a bullock, employed a licensed drover to drive it, the drover hired a boy to do the driving, and mischief was occasioned by the bullock, through the careless driving of the boy, it was decided that the relation of master and servant did not exist between the boy and the owner of the bullock, and therefore the defendant was not liable." Citing Milligan v. Wedge, 737, 40 Eng. Com. Law, top p. 366, which fully sustains the text. Pioneer Cons. Co. v. Hansen, *supra;* Hexamer v. Webb, 101 N. Y. 377, 383; Haluptzok v. Gt. Northern Ry. Co., 55 Minn. 446; Crudup v. Schreiner, 98 Ill. App. 337.

It cannot be seriously contended, in view of the facts above stated, that Cmucha was the defendant's servant or agent. He was not employed by the defendant or by his authority. It was not within the scope of Konieczka's employment to transfer his charge of the wagon and team to Joseph Cmucha, and to direct him to drive the team to the Maxwell street police station. His duty was, as the evidence shows, to keep charge of the team and wagon and to transport goods from the warehouse of the Woodenware Co. to the railroad freight house, and when he turned the team and wagon over to Cmucha and directed him that

when it was unloaded, he should drive to the Maxwell street police station, and if he should not meet him on the way, to stop at the station, he certainly was not engaged in his master's business, but acting merely and solely for his own convenience and in his own business. The effect was the same (except perhaps as to the accident) as if he, himself, had driven the team to the Maxwell street police station, for the purpose of attending to the case against him. It appears from the evidence that after the wagon ran over the deceased, the horses became restive and ran, and Cmucha could not check them till they reached 12th street, when he got out of the wagon, and some men drove the team to the Maxwell street police station, and Koniesczka found the team and wagon there.

In Shearman & Redfield on Neg.; vol. 1, p. 240, sec. 146, the author says: "He (the master) is not responsible for any act or omission of his servants with respect to matters unconnected with the general business in which they serve him, and which have nothing to do with the course of their employment." And in sec. 147 of the same volume, the author says: "If the act is done while the servant is at liberty from his service, and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility."

Thompson on Negligence, vol. 2, p. 885, sec. 3, is to the same effect; see also, C., M. & St. P. Ry. Co. v. West, 125 Ill. 320, 323; N. C. Cy. Ry. Co. v. Gastka, 128 id. 613; Carl C. B'g. Co. v. Huggins, 96 Ill. App. 144; Belt Ry. Co. v. Banicki, 102 ib. 642, 647-8, citing numerous cases; Garretzen v. Duenckel, 50 Mo. 104. The last seems to be carefully and thoroughly considered.

The attorney for the defendant, at the close of all the evidence, moved the court to instruct the jury to find for the defendant, and presented a written instruction to that effect; but the court refused so to do, and this is assigned as error. Counsel for the plaint-

iff, in contending that the defendant waived his motion to take the case from the jury, by going to the jury on the merits, has evidently overlooked Union Traction Co. v. O'Donnell, 211 Ill. 349, and other cases.

Counsel for defendant excepted to certain instructions given at the plaintiff's request, and to the refusal of certain instructions asked by the defendant; but we having arrived at the conclusion, as matter of law, that there can be no recovery against the defendant, and that the court erred in not taking the case from the jury, it would be a work of supererogation to consider these exceptions.

The judgment will be reversed.

