MARTÍNEZ, PLAINTIFF AND APPELLANT, *v.* TRUJILLO & MERCADO, DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action for Damages.

No. 1372.—Decided July 6, 1916.

MASTER AND SERVANT—COMMON LAW—LIABILITY FOR ACTS OF EMPLOYER.—The provisions of section 1804 of the Civil Code are very similar to the principle of the common law that a master is only liable for the acts of his servant within the limit or scope of the latter's employment.

ID.—LIABILITY FOR ACTS OF EMPLOYEE—DUTY OF SERVANT—NATURAL AND PROBABLE CONSEQUENCES—TRESPASSER.—When laborers meet on a farm or plantation and one of them asks the watchman, who was on his rounds of inspection carrying a gun which had been furnished him by his employer, whether he would kill a trespasser who tried to steal a piece of cane, and in demonstrating how he would do it the watchman loads the gun, which is discharged while he is closing the breech and causes the instantaneous death of one of the laborers, the master is not responsible for the act of his employee, for said demonstration formed no part of his duties and the accident was not the natural and probable result of entrusting him with the weapon.

The facts are stated in the opinion.

*Mr. Eduardo Flores Colón* for the appellant.

*Mr. A. F. Castro* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The essential averments of the complaint in this case were as follows:

That the complainant is of age, a widow, resident of Guayanilla and the legitimate mother of Tomás Rodríguez, on whom she was dependent for support, and that the defendant is an agricultural firm situated in the city of Ponce, Porto Rico.

That on September 4, 1914, the defendant employed as a watchman of its farm "Rufina" a certain Ramón Correa, whose duty it was as a vigilant watchman to use and carry a gun furnished him by the defendant. That on the said 4th of September, 1914, the watchman of the farm "Rufina" while he was going the rounds of the said farm met some workmen and when one of them asked him if he was capable

of killing a man on account of a piece of cane, he proceeded to load his gun to show the said workmen what he would do if he found anyone stealing cane; and that when he tried to close the breech of the gun (the gun not closing because it was in an unserviceable state) he pressed it with such force that the gun went off, hitting Tomás Rodríguez and instantly causing the death of the latter.

That the watchman of the farm "Rufina," Ramón Correa, did not know how to handle the gun and when he tried to show what he would do to put thieves to flight, carelessly and negligently shot off the same, causing the death of Tomás Rodríguez.

That the defendant knew of the ignorance of the watchman, Correa, for the work to which he was assigned, and knew that the said Correa did not know how to make a gun work.

That the gun furnished by Trujillo & Mercado to its watchman, Correa, in the discharge of his duties was out of repair, in a bad condition and not serviceable for its intended use.

That the accident arose as a consequence of the act of the watchman of the farm "Rufina" and of the carelessness, fault and neglect of the defendant in having an incompetent employee and in giving him a useless and inadequate gun for the discharge of his duties, and without the fault or negligence of Tomás Rodríguez.

The complaint claims $10,000 damages.

A demurrer was filed and sustained by the court and subsequently a judgment was rendered for the defendant.

Section 1804 of the Civil Code, among other things, provides that the owners or directors of an establishment or enterprise are liable for the damages caused by their employees in the service of the branches in which the latter may be employed or on account of their duties.

The appellee maintains that the death of Tomás Rodríguez was not caused by Ramón Correa while the latter was acting in any branch of the service for which he was em-

ployed, inasmuch as it was no part of his duties to make a demonstration of the kind to which the complaint refers.

The provision of section 1804, to which we have referred, is very similar to the common-law principle that a master can only be held responsible for the acts of his servant within the scope of his employment; and both of the parties have invoked the common-law jurisprudence.

It should be noted that the complaint in this case is brought partially on the theory that Trujillo & Mercado was responsible, because it gave its servant a gun that was out of repair, and partially under the theory that the defendant was responsible because the servant was incompetent and did not know how to use the gun, and also, and perhaps principally, because the watchman Correa was negligent in the use of the same.

With respect to the employee and the unserviceableness of the gun, unless it was some part of his duty to show it or use it with relation to Tomás Rodríguez or the giving of the gun had some other causal connection with the accident, we cannot see the responsibility of the defendant. The accident was in no sense the natural and probably consequence of the giving of the gun. This is not the case like that of a father, for example, who is held responsible for the negligent acts of an irresponsible child who may not be entrusted with a dangerous weapon. Where a father entrusts or permits a weapon of this kind to come into the hands of an irresponsible child he is generally held for the consequences. 29 Cyc. 1666; 38 Cyc. 454, 455, note 9; 29 Cyc. 492. There is not any intimation in the complaint that Correa was irresponsible, but merely that he was incompetent and did not know how to use firearms. Similarly, it was not the theory of the complaint and the facts alleged do not show that the natural and probable cause of the accident was the incompetence of Correa in the knowledge, use, and handling of firearms, but the cause of the accident was his unforeseeable demonstration. We do not need to spend a great deal of time on either of

these theories because more or less directly the case depends upon whether Correa was acting within the scope of his employment.

In the case of *Marrero* v. *López et al.,* 15 P. R. R. 746, the judgment of the court below was affirmed, this court dividing on the question of whether we could take notice of the facts of the trial from the statement found in the opinion of the trial court. In that case Mr. Justice MacLeary wrote a concurring opinion reviewing the facts. He was of the opinion that when an overseer in making the rounds of the property under his custody asked a boy for a drink of water and the latter declined and was struck by the former, and when running away was shot by the overseer, such an act, not being within the scope of the overseer's duties and not in the line of his employer's business and beyond the scope of his authority, did not bind the principal. On page 753 of that opinion a much-cited extract from the case of *Stone* v. *Hills,* 45 Conn. 44, 29 Am. Rep. 636, is quoted, viz:

"The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible."

Various authorities were also cited by Mr. Justice Mac-Leary to show that where a servant deviates from the line of his employment, although actually employed at the time in the discharge of his master's duties, the master is not responsible.

It has been held a number of times that the master is not responsible for the act of his watchman in shooting trespassers (*Holler* v. *Ross,* 23 L. R. A. 943; *Robards* v. *P. Bannon Sewer Pipe Co.,* 18 L. R. A. [N. S.], 923; *Conchin* v. *El Paso Southwestern Railroad Co.,* 28 L. R. A. 88; *Magor* v.

*Hammond,* 3 L. R. A. [N. S.], 1038, 26 Cyc. 1541), but, on the other hand, where a watchman is given specific directions to ward off trespassers and somewhat exceeds his authority, the master has been held responsible as the authorities immediately foregoing show.

Where a boy, who was the agent of his father, was directed to water the lawn, turned the hose on a horse so that the horse ran away and did damage to the buggy, the father was not held responsible for the minor child. *Evers* v. *Krouse,* 66 L. R. A. 592. In that case reference is made to the decision in *Holler* v. *Ross,* 68 N. J. L. 324, 59 L. R. A. 943. In another case it was the duty of the engineer of a locomotive to blow his whistle at a certain point. He blew it, but blew it so maliciously and violently that he frightened a horse. The company was held responsible for the act of the engineer on the rule that the master is responsible for the injuries resulting from an act done by his servant within the scope of the latter's employment, without regard to whether the act was done negligently or even maliciously. *Battle* v. *Camden & A. R. Co.,* 55 N. J. L. 615, 23 L. R. A. 283.

In *Ploof* v. *Putnam,* 26 L. R. A. (N. S.) 251, the owner of an island was held responsible for the act of his caretaker in casting off the moorings of a vessel which had sought refuge at the wharf in a storm, although he was not expressly instructed to do so, and the court held also that it was immaterial whether the act was done carelessly or wilfully if it was not done to serve some purpose of the caretaker. One of the facts of the case was that the caretaker was told that the defendant did not care to have people tie up to his wharf.

*Soderlund* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 13 L. R. A. 1193, was a case where a crew of six or seven men, including the plaintiff, were engaged in repairing a railway track, and appellant provided hand cars for the purpose of going to and from their work. At the time of the accident the other members of the crew propelled the car at such a high rate of speed that plaintiff lost his hold on the handle-

bars and fell from the car. There was no necessity for running the car so rapidly, and it was done thoughtlessly, in the spirit of fun, and for their own amusement, although the plaintiff had asked them not to go so fast. Here, as in the New Jersey case where the engineer blew his whistle, it was held that it was part of the duty of the other workmen to run the hand car and that defendant was responsible.

*Garretzen* v. *Dunckel,* 50 Mo. 104, 11 A. R. 405, was a case where the defendant kept a gun store and had given specific instructions to one of his clerks not to load a gun. A customer refused to purchase a gun unless a demonstration thereof was made. The clerk attempted to load it; it was accidentally discharged and shot plaintiff. The court held the owner of the shop responsible.

In *Doran* v. *Thomson,* 19 L. R. A. (N. S.), 338, the court held that the mere furnishing of facilities to a servant did not make the master responsible. The case was one where a daughter was held to have had a right to take out her father's automobile. While doing so she carelessly injured somebody else and the father was held not to be responsible. She was not about his business, nor was the machine specially furnished her. The theory of putting a dangerous instrumentality in the hands of an incompetent person was expressly disclaimed.

In *Chesapeake and Ohio Ry. Co.* v. *Dixon,* 179 U. S. 131, cited by appellant, the court cites with approval the statement from Pollock on Torts (Amer. ed. 89, 90), as follows:

"I am answerable for the wrongs of my servant or agent, not because he is authorized by me or personally represents me, but because he is about my affairs, and I am bound to see that my affairs are conducted with due regard to the safety of others."

In the note to *Ritchie* v. *Waller,* 27 L. R. A. 161, it was the opinion of the commentator that only recently had the liability been placed on the true ground. The master, he points out, is not required in all cases to insure the conduct

of his agent, but if the probable effect of misconduct, either because of the dangerous character of the implements entrusted to the servant or of the exacting nature of his duties, will be serious injury to third persons, he must be like an insurer.

Now, while we think that in this case Correa might perhaps be thought to be acting in his master's interest, yet he performed that service in such an extraordinary fashion that his act was not within the prevision of any ordinary person. Trujillo & Mercado could have no idea that its servant when asked by a workman if he would kill a trespasser, said servant would make a demonstration of what he would or could do. It was impossible for any ordinary man to foresee that a servant would do this thing. We are aware, of course, that if these persons had been in fact trespassers, and if the specific instructions of Correa had been to keep off trespassers at all hazards, or even something less, his careless manner of handling the gun might under conceivable circumstances have made his principal responsible. In the complaint, however, no specific instructions or duties are alleged beyond the fact that it was the duty of Correa to use and bear a gun. The workmen were in nowise trespassers nor is there anything in the complaint to suggest that these workmen, or any other workmen, were likely to be trespassers. We have no idea of what Correa intended to do after his gun was loaded, but it certainly was not his intention to shoot an innocent bystander. Under all the circumstances we cannot see that the defendant owed the public any duty with respect to protecting them from this unexpected act of its agent. The proximate cause of the accident was the arbitrary demonstration on the part of defendant's agent.

The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.