Stone *v.* Hills.

———◆◆◇———

## JAMES B. STONE *vs.* ASA G. HILLS AND OTHERS.

The defendants, who were paper manufacturers, sent their servant with a team belonging to them to deliver a load of paper to one *T*, four miles distant, directing him to return thence to the mill by a particular route, getting a load

of wood on his way. When he arrived *T* requested him to go on with the paper to a warehouse at *H*, four miles farther, and to get some freight at the railway station in *H*, pay the freight bill and bring the freight to him. The servant drove to *H*, and while at the railway station there left his horses unhitched and unattended, and they ran away and injured the property of the plaintiff. Held that the servant was not to be regarded as at the time in the employment of the defendants, and that they were not liable.

TRESPASS ON THE CASE, for an injury by reason of the negligence of the defendants' servant; brought before a justice of the peace, and appealed by the defendants to the Court of Common Pleas of Hartford County, and there tried to the court on the general issue, before *McManus, J.* The court made the following finding of facts:

On the first day of March, 1876, the defendants were operators of a paper-mill in the town of Glastonbury and had in their employment one Smith, as a driver of their team. On that day they directed him to carry a load of paper from the mill and deliver it to one Taylor at a point in the same town four and a half miles distant, and to return from thence by way of Nipsic with a load of wood. On reaching Taylor's, the latter requested Smith to deliver the paper at the warehouse of Tracy & Co. in the city of Hartford, four and a half miles distant from Taylor's, and to go from thence to a railway freight station in the city and get some freight belonging to Taylor and transport the same to his place. Smith acceded to Taylor's request, and while in the railway station paying Taylor's freight bill, the horses, which he had negligently left unhitched and unattended, being frightened by a passing train, ran up the street and against the plaintiff's wagon, and injured it to the extent of $18.42, besides making it necessary for him. to expend $6 in addition for the use of another wagon.

The court, upon these facts, rendered judgment for the plaintiff, and the defendants brought the case before this court by a motion in error.

*W. S. Goslee,* for the plaintiffs in error.

Smith was not, at the time of the injury complained of, the servant of the defendants, or acting "within the fair scope of their order, direction and authority." Chitty on Contracts,

640; *Martin* v. *Temperly*, 4 Adol. & Ell. (N. S.,) 312. The course he pursued and the route he took were his own willful acts, done upon his own responsibility, or at best on the suggestion or request of a third party. "It was not in pursuance and within the scope of the business entrusted to him." Chitty on Contracts, 648, 649, and note on p. 650; 1 Black. Com., 431; *Sleath* v. *Wilson*, 9 Car. & P., 607; *Lamb* v. *Palk*, id., 629; *Joel* v. *Morrison*, 6 id., 501; *Mitchell* v. *Crassweller*, 13 Com. B., 237; *Storey* v. *Ashton*, L. Reps. 4 Queen's Bench, 476; *Bard* v. *Yohn*, 26 Penn. S. R., 482; *Howe* v. *Newmarch*, 12 Allen, 49; *Stevens* v. *Armstrong*, 2 Seld., 435; *Church* v. *Mansfield*, 20 Conn., 287. Smith being engaged in business of his own, and acting entirely contrary to his duty to the defendants, his course being a total departure, not a different route between the places where he was directed by them to go and return, they are not responsible for the results of his negligence in this case.

*C. H. Owen*, for the defendant in error.

1. A principal is liable for the negligence of his agent, even though the conduct of the agent is without his participation or consent, provided the act is done in the course of the employment and is not a *willful* departure from it. *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 Conn., 54; *Phelon* v. *Stiles*, 43 id., 426; *Johnson* v. *Barber*, 5 Gilman, 425; *Wright* v. *Wilcox*, 19 Wend., 343; *Wiswall* v. *Brinson*, 10 Ired. Law, 554. The majority of the court in the last case give as the reason of the master's responsibility, his power of selection. See also 1 Parsons Mar. Law, 378, 387. The master is liable, though the servant or driver be out of the direct route for purposes of his own, and contrary to instructions, because he put it in the power of the servant to do the injury. 1 Swift Dig., 67; *Sleath* v. *Wilson*, 9 Car. & P., 607; *Phila. & Reading R. R. Co.* v. *Derby*, 14 How., 468, 486.

2. The employment of Smith by the defendants is a question of mixed law and fact. *Redding* v. *So. Carolina R. R. Co.*, 3 So. Car., 1, and cases cited. It is found that Smith

was in their employment as a driver. "Carriers by land usually deliver the goods by carrying them to the owner or *where he directs.*" 2 Parsons Cont., 188; *Richardson* v. *Goddard*, 23 How., 39. And it was for the benefit of the defendants that the consignee loaded Smith's team with return freight. 1 Parsons Mar. Law, 381. And in the absence of evidence that this benefit was renounced, the defendants are to be considered as accepting it, and as adopting his acts as those of their servant. Id., 383. See also Wood on Law of Master & Servant, §§ 277, 282, 287, 288, 295, 307.

PARDEE, J. The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible. We cite a few from the many cases in which this rule has been judicially illustrated and applied.

In *Mitchell* v. *Crassweller*, 13 C. B., 237, the defendant's carman having finished the business of the day returned to their shop in Welbeck street with their horse and cart, and obtained the key of the stable, which was close at hand; but instead of going there at once and putting up the horse, as was his duty, he drove to Euston Square, and on his way back negligently drove over the plaintiff; and it was held that the carman was not at the time engaged in his master's business so as to make him liable. Maule, J., said: "At the time of the accident the servant was not going a roundabout way to the stable, and as one of the cases expresses it, making a detour. He was not engaged in the business of his employer. But in violation of his duty, so far from doing what he was employed to do, he did something totally inconsistent with his duty, a thing having no connection whatever with

his employer's service. The servant only is liable and not the employer. All the cases are reconcilable with that. The master is liable even though the servant in the performance of his duty is guilty of a deviation or failure to perform it in the strictest and most convenient manner. But when the servant, instead of doing that which he is employed to do, does something which he is not employed to do at all, the master cannot be said to do it by his servant, and therefore is not responsible for the negligence of the servant in doing it." In *Storey* v. *Ashton,* L. Reps. 4 Queen's Bench, 476, the defendant intrusted his servant with his horse and cart for the day, and when his work was ended and it was his duty to drive home, he, for a purpose of his own and without authority express or implied from his master, drove in an entirely different direction and by his carelessness injured the plaintiff. The court held that the master was not liable.

In *Sleath* v. *Wilson,* 9 Car. & P., 607, Erskine, J., said in his charge to the jury: "But whenever the master has intrusted the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it.    *    *    The master in such a case will be liable, and the ground is, that he has put it in the servant's power to mismanage the carriage by intrusting him with it." In *Storey* v. *Ashton,* Cockburn, C. J., said: "I think the judgment of Maule and Cresswell, J. J., in *Mitchell* v. *Crassweller,* expresses the true view of the law, and the view which we ought to abide by; and that we cannot adopt the view of Erskine, J., in *Sleath* v. *Wilson,* that it is because the master has intrusted the servant with the control of the horse and cart that the master is responsible. The true rule is that the master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment as servant. I am very far from saying, if the servant when going on his master's business took a somewhat longer road, that owing to this deviation he would cease to be in the employment of the master, so as to divest the latter of all liability; in such cases it is a question of degree as to how far the deviation could be

considered a separate journey. Such a consideration is not applicable to the present case, because here the carman started on an entirely new and independent journey which had nothing at all to do with his employment. It is true that in *Mitchell* v. *Crassweller* the servant had got nearly if not quite home, while, in the present case, the carman was a quarter of a mile from home; but still, he started on what may be considered a new journey entirely for his own business, as distinct from that of his master; and it would be going too far to say that under such circumstances the master was liable." In the same case, Mellor, J., said: " But here, though the carman started on his master's business, and had delivered the wine and collected the empty bottles, when he had got within a quarter of a mile from the defendant's office he proceeded in a directly opposite direction, and as soon as he started in that direction he was doing nothing for his master; on the contrary, every step he drove was away from his duty." In *Cormack* v. *Digby*, Irish Reports, 9 Com. Law Series, 557, a servant had leave from the master to go for the day to a neighboring town to transact business of his own, and borrowed his master's horse and cart for the purpose; he afterwards proposed, and the master assented, that he should bring home some meat from the town for the master; by negligent driving he injured the plaintiff. Held, in an action against the master for the negligence of the servant, that the court could not hold as matter of law, upon the evidence, that the master was responsible for the negligence of the servant.

In *Lamb* v. *Palk*, 9 Car. & P., 629, where a servant driving his master's horse got off the carriage and took hold of a horse standing before a van and caused the van to move so as to make room for the carriage to pass, whereby a packing case fell from the van and broke the thills of the plaintiff's gig, it was held that the master was not liable for the injury. In *Woodman* v. *Joiner*, 10 Jur., N. S., 852, the plaintiff permitted the defendant to use his shed temporarily as a carpenter's shop, and the defendant's workman in lighting his pipe set the shed on fire; the court held that the defendant was not liable in an action for negligence, saying, "We have had much

doubt upon this question, but have all arrived at the conclusion that there is no liability. If the servant had been guilty of any *negligence relating to his employment*, it may be that the defendant would have been liable." In *Campbell* v. *City of Providence*, 9 R. Isl., 262, the defendant, a hack owner, employed a person as a day driver. He used the hack at night without the master's consent or knowledge. Held that the master could not be held responsible for an omission on the part of the driver to comply with the terms of a city ordinance during the time of such unauthorized use of the hack.

In *Howe* v. *Newmarch*, 12 Allen, 49, Hoar, J., while holding the defendant responsible for the servant's negligence in executing the master's orders, says: "And in an action of tort, in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders or doing his work. So that if the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable."

In *Wilson* v. *Peverly*, 2 N. Hamp., 548, a fire was set upon the land of the defendant by his orders and the charge of it given to a hired laborer; the defendant then left home, directing the laborer, after setting the fire, to employ himself in harrowing other land of his; but the laborer, before he commenced harrowing, undertook to carry brands from the first fire into the ploughing field for the purpose of consuming piles of wood and brush there collected, and in so doing dropped coals of fire from which fire communicated to the plaintiff's land and injured it. The jury found that the manner of carrying the fire was dangerous and not in conformity to any express directions of the master, and that the laborer was accustomed to work under the particular directions of the defendant and could conveniently have harrowed without first burning the piles of wood; though to burn them first is the usual course of good husbandry. In affirming a judgment for the defendant the court, in the course of the opinion,

Stone *v.* Hills.

says that the master is not liable for "wrongs caused by carelessness in the performance of an act not directed by the master; as a piece of business of some third person, or of the servant himself, or of the master, but which the master did not, either expressly or impliedly, direct him to perform. * * * * * Thus a piece of labor might be very safely performed at one time and not at another, as in this case of the setting of a fire in the neighborhood of much combustible matter, and if the master, when the fire would be highly dangerous in such a place, forbore to direct it to be kindled, and employed his servant in other business, it would be unreasonable to make him liable, if the servant before attending to that business went in his own discretion and kindled the fire to the damage of third persons."

In the case before us the servant left the employers' premises under precise instructions as to the place to which their team was to be driven and as to the merchandize to be transported; and under instructions equally precise as to the route to be taken in returning and as to what he should bring home. These therefore covered the entire period of his contemplated absence; nothing was left to his option or discretion; nothing to chance; and in fact the deviation was not occasioned or even suggested by any unforeseen event in connection with the employers' business; the record shows no obligation, express or implied, upon them to deliver the paper elsewhere than in North Glastonbury, nor that the journey thence to Hartford, even if successfully accomplished, would have been for their advantage or profit; it was not connected with, did not grow out of, did not contribute to, the successful completion of their business. When therefore the servant accepted instructions from Taylor and became a carrier of merchandize for him to and from a railroad station in an adjoining town, he temporarily threw off his employers' authority, abandoned their business and left their service. They are not responsible for his negligence on this occasion. There is error in the judgment complained of.

In this opinion the other judges concurred; except LOOMIS, J., who did not sit.