WILLIAM P. JOHNSON, APPELLEE, v. UNION PACIFIC RAIL-
ROAD COMPANY, APPELLANT.

FILED NOVEMBER 26; 1923.  No. 22569.

1. Negligence: FEDERAL EMPLOYERS' LIABILITY ACT: CONTRIBUTORY
NEGLIGENCE AS DEFENSE.  Under the federal employers' liability
statute, contributory negligence is not a complete defense to an
action for personal injuries.  If the injured employee was him-
self guilty of negligence contributing to the injury, this "shall
not bar a recovery, but the damages shall be diminished by the
jury in proportion to the amount of negligence attributable to
such employee."  U. S. Comp. St. (1918) sec. 8659.

2. Master and Servant: INJURY: PROXIMATE CAUSE.  Evidence ex-
amined, and *held* that the negligent omission to change the switch
and the consequent negligent moving of cars upon the wrong
track without warning plaintiff was the proximate cause of the
accident.

3. ———: ———: ASSUMPTION OF RISK.  In actions under the
federal employers' liability act, the doctrine of assumption of
risk has no application when the negligence of a fellow servant,
which the injured party could not have reasonably foreseen or
expected, is the direct and immediate cause of the injury.

4. ———: ———: ASSUMPTION OF CARE.  An employee, under said
act, may assume that the employer or his agents, his coem-
ployees, have exercised proper care with respect to his safety,
until notified to the contrary, unless the want of care and the
danger are so obvious that an ordinarily careful person under
the circumstances would observe and appreciate them.

5. Instructions given and refused examined, and *held* that the court
committed no error with respect to them.

6. Negligence: DAMAGES.  The jury not having "diminished" the
damages suffered by plaintiff "in proportion to the amount of
negligence attributable" to him, a remittitur is required as a
condition of affirmance.

APPEAL from the district court for Douglas county:
L. B. DAY, JUDGE.  *Affirmed on condition.*

C. A. Magaw, T. W. Bockes and D. F. Smith, for appel-
lant.

Baker & Ready, contra.

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., REDICK, District Judge.

LETTON, J.

Action for personal injuries brought under the federal employers' liability act. Plaintiff recovered a judgment, and defendant appeals.

Defendant is a common carrier operating a railroad through several states. It maintains switching-yards in Omaha. On April 10, 1920, plaintiff was working as foreman of a switching-crew, the other members of the crew being Dennis Murray and D. R. Johnson. He was thoroughly familiar with the yards in which he was working, having worked many years in the switching-yards of defendant, in Omaha. He had received orders from his superior officer to switch 11 freight cars containing interstate shipments. At the noon hour on that day he gave directions to Murray and D. R. Johnson as to which cars were to be moved and designated the tracks upon which they were to be placed. It was Murray's duty to couple and uncouple cars, open and close switches, and communicate signals to the engineer, under plaintiff's direction. The switching-yards comprise about 10 or 12 switch tracks, converging toward the north and extending in a curve south and westerly; what is known as the "main lead track" being about the ninth or tenth track from the north at about the point where the tracks curve to the west most rapidly. During the movements ordered, plaintiff, while crossing track No. 6, was struck by two cars which had been detached, in such a manner that he fell across the rails of that track. Both of his arms were cut off, one above and one below the elbow, and other injuries were sustained.

While a number of charges of negligence are made in the petition, the essential act upon which plaintiff's cause depends is the omission of Murray to close switch No. 6, and his negligence in failing to warn plaintiff of the danger of crossing track No. 6 after he knew, or should have known, that by so doing plaintiff would be exposed to great

danger from the moving cars. The answer, in addition to a general denial, pleads negligence and carelessness on the part of plaintiff in ordering cars to be "kicked" along the lead track without ascertaining whether the switch was properly lined for that movement; in going upon the track where the accident occurred without looking or listening for the approach of cars on that track; and in failing to give any notice or attention to the switching movements which he was employed by the defendant to supervise, direct and control. It is also alleged that he assumed the risk of such an accident.

The errors assigned may be grouped as follows: The court should have instructed the jury to return a verdict in defendant's favor because plaintiff was guilty of contributory negligence as a matter of law; the verdict is excessive and appears to have been given under the influence of passion and prejudice. There are also errors assigned as to the giving of instructions, which will be noticed later.

Under the federal employers' liability statute, contributory negligence is not a defense. Defendant insists that the evidence shows so clearly that the negligence of plaintiff was the proximate cause of the accident that the question ceases to be one of fact but becomes one of law; that plaintiff assumed the risk, and that it was the duty of the court under this evidence to instruct the jury to return a verdict for the defendant.

Plaintiff had directed Murray by signals to clear track No. 7, cut off two cars and "kick" them in on the "main lead track." In order to do this, switch No. 6, which Murray had opened a short time before in order to permit cars to be moved on the "oil dock track," should have been closed or "lined" by him so that cars which were to be pushed in from the north should move past this switch upon the main lead track, and not be diverted upon track No. 6. When plaintiff gave this order he was standing near track No. 7, south and west of switch No. 6. He then walked a little east of south toward switch No. 4 in order to set that switch so that the next car, after the two had been "kicked" along

the main lead track, could be placed upon house track No. 4. To do this it was necessary for him to cross over track No. 6. Just as he was in the act of stepping over the first rail of this track he was suddenly struck by the cars which he had ordered to be placed upon the "main lead track," but which, through the negligence of Murray in not closing switch No. 6, were unexpectedly moved upon track No. 6.

Plaintiff had no reason to believe that Murray had not obeyed his instructions with regard to the setting of the switch at No. 6. In the direction in which he was walking, switch-stand No. 6 would be out of his line of vision unless he looked backward. As he walked to switch No. 4, if he had looked northeasterly toward the train, on account of the converging of the tracks of the main lead and the oil dock track and track No. 6, and on account of the speed of the train, which was moving at the rate of 10 or 12 miles an hour, it would have been almost impossible for him to determine upon which track the cars were moving, until they were almost upon him. Only a few seconds intervened from the time this became determinable until he was struck. He had given Murray the proper signals, and Murray had answered that he had received them correctly. He was no doubt intent upon the work he was about to perform, and while, as defendant argues, it was his duty to see that Murray performed the work assigned to him, and he may have been negligent in not observing the actions of Murray with regard to moving the switch so that the cars would move upon the proper track, yet, if in every instance after orders are given and their giving acknowledged, a foreman, who is also a fellow switchman having duties of his own to perform with respect to opening and closing switches, should remain quiescent until he sees that every order given to his subordinates is complied with, the business of his employer would be much delayed, and it may safely be assumed that he would not hold his position very long. Plaintiff was negligent to some degree in failing to look before he stepped on the track, but this does not prevent a recovery under the statute.

In *Illinois C. R. Co. v. Skaggs,* 240 U. S. 66, a case similar in several respects, it was said by Mr. Justice Hughes: "The inquiry must be whether there is neglect on the part of the employing carrier, and, if the injury to one employee resulted 'in whole or in part' from the negligence of any of its other employees, it is liable under the express terms of the act. That is, the statute abolished the fellow-servant rule. If the injury was due to the neglect of a coemployee in the performance of his duty, that neglect must be attributed to the employer; and if the injured employee was himself guilty of negligence contributing to the injury, the statute expressly provides that it 'shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' See *Second Employers' Liability Cases,* 223 U. S. 1, 49, 50; *Seaboard Air Line R. Co v. Tilghman,* 237 U. S. 499, 501." See, also, *Norfolk & W. R. Co. v. Earnest,* 229 U. S. 114.

Appellant argues that the failure of Murray to line the switch properly was not the proximate cause of the accident, and that the fact Johnson walked upon or too close to the track was an intervening cause without which the accident would not have happened. But, when an order has been given by a foreman that the cars move upon a designated track, the fact that they are run at the rate of 10 or 12 miles an hour upon an adjacent track upon which the foreman would have no reason to expect them to run, and while there was every reason to expect that he would be walking on or about this track, makes the negligent moving of the cars upon the wrong track without warning the proximate cause of the accident.

Defendant has argued at some length the proposition that the plaintiff assumed the risk of Murray's failure to line the switch. In *Reed v. Director General,* 258 U. S. 92, the facts were that a brakeman had been stationed upon the front end of a caboose which was in front of a moving engine, with a duty to signal the engineer in time for him to safely stop if the derailing switch upon the rails was set against further passage. It was so set upon this occasion; but,

either through the negligence of the decedent himself or of the engineer in failing to notice or heed the signal of the decedent, the locomotive did not stop in time, and the plaintiff's decedent was killed. The supreme court of Pennsylvania held that the decedent had assumed the risk of the negligence of the engineer. After discussing a number of cases in the United States supreme court, that court held: "In actions under the federal act the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant, which the injured party could not have foreseen or expected, is the sole, direct and immediate cause of the injury. To hold otherwise would conflict with the declaration of congress that every common carrier by railroad while engaging in interstate commerce shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers."

In *Chesapeake & O. R. Co. v. De Atley,* 241 U. S. 310, it was held that an employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger are so obvious that an ordinarily careful person under the circumstances would observe and appreciate them.

In another case the facts were that a switchman, when about to apply the brake to stop a "cut" of freight cars, was thrown to the ground by a jerk due to the failure of the engine foreman to properly cut off the cars at th time he directed the engineer to retard the speed of the engine, so that the car upon which the plaintiff was about to set the brake was suddenly checked in such a manner as to throw him from the top of the car. The court said: "In the absence of notice to the contrary, and the record shows none, Ward had the right to act upon the belief that the usual method would be followed and the cars cut off at the proper time by the engine foreman so that he might safely proceed to perform his duty as a switchman by setting the brake to check the cars which should have been detached. * * * It

was a sudden emergency, brought about by the negligent operation of that particular cut of cars, and not a condition of danger, resulting from the master's or his representative's negligence, so obvious that an ordinarily prudent person in the situation in which Ward was placed had opportunity to know and appreciate it, and thereby assume the risk." *Chicago, R. I. & P. R. Co. v. Ward,* 252 U. S. 18. See *Chesapeake & O. R. Co. v. Proffitt,* 241 U. S. 462.

In all of these cases, as in this, the injured party was subjected to unusual and extraordinary risks which he could not anticipate. Applying the principle that the negligence of a coemployee stands in the same relation as that of the employer as to assumption of risk, we think it clear that plaintiff did not assume the risk of the negligence of his coemployee, Murray, under the facts in the case.

Complaint is made of the refusal to give instruction No. 2, requested by defendant, which deals with the subject of contributory negligence. There was no error in this refusal. By instruction No. 5 the law as to contributory negligence was properly stated to the jury.

We think the jury were not misled by instruction No. 1, in which the court stated to the jury the substance of the petition, even though it is not expressly stated that these are the allegations therein. Considering the whole of this instruction, the jury must have understood it as merely stating plaintiff's cause of action, and not as stating the facts in the case. Nor could the jury be misled by instruction No. 2, which merely purports to state to the jury the matters of defense. We find no prejudicial error in either of these instructions. While the giving of other instructions is assigned as error, the points are not argued and it is unnecessary to consider them.

The next complaint made is that the verdict is excessive, that the negligence attributable to the plaintiff is much greater than that attributable to the defendant, and that the recovery of $47,216 clearly shows that the jury did not diminish the damages on account of plaintiff's negligence. It is said that the evidence shows that the plaintiff's earning

capacity is not entirely destroyed, and that the art of fabricating and applying artificial limbs has so advanced that an armless person can perform many kinds of labor. It is also asserted that the negligence of plaintiff was about 75 per cent. of the total, and that, even if plaintiff is entitled to recover, he should only recover about $12,000. It is true that the verdict is for a very large amount. When we consider the pain and suffering of plaintiff; his well-nigh helpless condition; his earning capacity (this at the time of the accident was $5.33 a day and overtime, but the wages of engine foremen have since been raised to $7 a day) ; his age, which was 37 years at the time of the trial; his expectancy of life, which was 29.64 years; and the amount of an annuity which the sum named in the verdict will purchase, it seems clear that the jury made little or no deduction on account of plaintiff's negligence, and made a liberal award, even if he had been blameless in all respects. Plaintiff was guilty of negligence. A glance would have saved him. His earning capacity is not entirely gone. We are of the opinion that $36,000, and no more, is a fair and just recovery, under all the facts.

The judgment of the district court we consider excessive to the extent of $11,216. It is therefore reversed unless plaintiff enters a remittitur of that amount, as of the date of the judgment, within 20 days from the filing of this opinion. In that case it will stand affirmed at the reduced amount.

AFFIRMED ON CONDITION.