ETHYL LAFLEUR, ADMINISTRATRIX, APPELLANT, V. WILLIAM POESCH ET AL., APPELLEES: WESTERN PUBLIC SERVICE COMPANY, APPELLANT.

FILED FEBRUARY 27, 1934. No. 28678.

*Morrow & Morrow,* for appellants.

*Mothersead & York* and *Wright & Wright, contra.*

Heard before Goss, C. J., Rose, Good, Eberly and Paine, JJ., and Lovel S. Hastings, District Judge.

Hastings, District Judge.

This action was brought by Ethyl LaFleur, as administratrix of the estate of Harry C. LaFleur, deceased, against William Poesch and the Cudahy Packing Company to recover damages for alleged negligence resulting in the death of her husband, Harry C. LaFleur. The Western Public Service Company, by whom Harry C. LaFleur was employed at the time of the accident which resulted in his death, paid compensation under the workmen's compensation act to his widow and was joined as a defendant so that it might be subrogated to the rights of the plaintiff for such sums as it had paid or might thereafter pay under said act. At the close of plaintiff's evidence the court sustained separate motions of the defendants, Poesch and the Cudahy Packing Company, for a directed verdict. From the judgment entered on the verdict the plaintiff and the Western Public Service Company appeal.

The principal error assigned is that the court erred in directing a verdict for the defendants. It is contended by plaintiff that the evidence does not show that the decedent was guilty of such contributory negligence as would bar a right of recovery under the comparative negligence statute. The correctness of the ruling of the trial court will be tested in accord with the rule announced by this court in *Bainter v. Appel,* 124 Neb. 40, wherein it is stated:

"If there be any testimony before the jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it and direct a verdict against him. In reviewing such action, this court will regard as conclusively established every fact which the evidence proves or tends to establish, and if, from the entire evidence thus construed, different minds might reasonably draw different conclu-

sions, it will be deemed error on the part of the trial court to have directed a verdict thereon."

A consideration of the question involved necessitates a brief outline of the facts as disclosed by the evidence. The deceased, Harry C. LaFleur, at the time of his death and for several years prior thereto, was in the employ of the Western Public Service Company as a construction or line foreman. He and the men who worked under his direction had their headquarters at Scottsbluff. A truck was used for the purpose of conveying the men to and from their work and, also, to carry the equipment and material required in performing the work. On February 25, 1932, the deceased and his crew of three men, having completed their work, started at about 4:15 p. m. in the truck for Scottsbluff. When they reached a point on the main paved highway between Mitchell and Scottsbluff, about 4 miles east of Mitchell and 6 miles west of Scottsbluff, the motor of the truck became so disabled that the truck could not be driven on its own power. This happened at about 5:20 p. m. when it was still day-light. The truck in question was a large heavy truck, with dual wheels. in the rear, with brackets on the sides for carrying iron pipes or poles used in the performance of the work of repairing or constructing electric lines.' At the time the truck became disabled there were being carried on the brackets on the left side thereof 4 iron pipes which were 4 or 5 inches in diameter, three being 18 feet in length; there were also pipes of like size in brackets on the right side of the truck. The pipes 18 feet in length extended from near the door of the cab to about 6 feet to the rear of the body of the truck. The body of the truck was 6 feet and 4 inches in width and, with brackets loaded, over 80 inches in width. After the truck stopped, the starter was used to remove it from the pavement, as far as it could be removed by the use of the starter. This left the left wheels of the truck 2 feet and 2 inches on the pavement, the right wheels of the truck were off the pavement resting upon the shoulder of the highway,

which at that point was about 4 or 5 feet in width, with its sides sloping into a barrow pit about 4 feet in depth. The right wheels of the truck were between one foot and one foot and a half from the south edge of the shoulder of the highway. The truck, as parked, faced in an easterly direction. The pavement at the point where the truck was parked was 20 feet in width, leaving a clear space between the north side of the truck and the north edge of the pavement of nearly 18 feet. About 15 or 20 minutes after the truck became disabled the deceased sent one of the crew to Scottsbluff to procure a truck to pull the disabled truck to said town. It was still daylight. The man returned with the truck very shortly after the accident, which happened about 6:30 p. m. At the rear end of the poles there was a red flag. It was the intention of the deceased to reach Scottsbluff before it became dark and he would have done so had not the truck been disabled. The truck was not equipped with any lights except two headlights. When it began to get dark the two headlights were turned on, and not having any lights on the rear of the truck or at the end of the protruding load, the deceased directed that a blow pot, that was in the truck, be lighted and placed to the rear of the load. The lighted blow pot was placed on the pavement about 8 feet to the rear of the end of these poles. It gave a pinkish light about 10 inches in height, in size comparable to the lights used by the highway department to warn of some obstruction on or defect in the highway.

Shortly after dark a car was approaching from the east and also one from the west. The one from the west being driven by the defendant Poesch. Both of these cars had their headlights burning. The car of the defendant Poesch, when first noticed, was about a half mile distant from the truck and the other car approaching from the east somewhat nearer. The lighted blow pot was burning during all the time that the defendant Poesch was approaching the truck.

The deceased and two others of the crew were, at the

time those cars were approaching, standing on the left side of the truck near the cab. As the cars drew nearer it became apparent that they were going to pass at or near the point where the truck was located. Upon observing this, one of the men warned the others that they should get out of the way, and two of them immediately ran around to the front of the truck. Both were injured. The deceased remained where he was. As the two men reached the front of the truck, the car driven by the defendant Poesch struck the iron pipes projecting to the rear of the left side of the truck, one of which struck the deceased on the head and caused his death. One of the witnesses estimated the speed of the Poesch car as it approached the truck at 50 to 55 miles an hour. It appears from the marks upon the pavement the brakes on the Poesch car had been set about opposite the rear wheels of the truck. After striking the pipes it went around to the left of the truck, into the ditch on the right-hand side of the pavement. The distance from where the brakes were set to where the car went into the ditch was 56 feet and 8 inches. After going into the ditch on the south side of the pavement it traveled 23 feet east along the course of the ditch and turned over on its side.

It is agreed by all the witnesses that the Poesch car was being driven at a high rate of speed before and at the time it struck the pipes and probably a part of the truck. This fact may be properly inferred from the distance it traveled with the brakes set before turning over in the ditch. The Poesch car before striking the pipes ran over and demolished the lighted blow pot. For several miles west of the point where the truck was standing the highway was level with nothing to obstruct the vision of one driving east. At the time of the accident the atmospheric conditions were normal.

Section 39-1174, Comp. St. Supp. 1931, provides in part: "(a) Every motor vehicle upon a highway within this state during the period from a half hour after sunset to

a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of 200 feet ahead, shall be equipped with lighted front and rear lamps."

Section 39-1176, Comp. St. Supp. 1931, provides in substance: The head lamps of motor vehicles shall be so constructed, arranged and adjusted that they will at all times at night, under normal atmospheric conditions, and on a level road, produce a driving light sufficient to render clearly discernible a person 200 feet ahead.

Nothing to the contrary appearing in the evidence, it will be presumed that the headlights of the Poesch car complied with the statute, and, the atmospheric conditions being normal and the road level, that, if he had kept a proper lookout, he would have seen the truck on the pavement at least 200 feet before the collision, he would have observed the light upon the pavement at a much greater distance and would have been warned thereby that there was some obstruction on or defect in the highway at or near where said light was located. No explanation or reason appears in the evidence as to why the defendant, Poesch, with his car lighted as required by these statutes, could not see the truck or the load protruding therefrom, nor why he did not see the warning light or, if he did, why he did not heed the warning in time to have avoided striking the truck or the protruding pipes, or why, by turning to the left, he could not have avoided the collision. Giving no heed to the truck, which must have been clearly discernible within the radius of his lights, or to the warning light upon the pavement, he drove at an excessive rate of speed over the light and into the pipes protruding at the rear of the truck and, probably, into the truck.

We think, in the matters pointed out, there is such evidence of negligence on the part of said defendant as would warrant a finding of gross negligence on his part, or, so far as inferences may be drawn from the evidence

adduced, would warrant a finding that his negligence was the proximate cause of the injury.

It is contended by counsel for defendants that, notwithstanding the negligence of the defendant Poesch, the deceased, LaFleur, was guilty of contributory negligence which was more than slight in comparison with the negligence of said defendant. The alleged acts of contributory negligence upon which such contention is based are: (a) In leaving the truck standing in part upon the paved highway; (b) in not displaying at the rear of the truck, it being more than 80 inches in width with its load, a red light; (c) failure to display at the end of the load a red light; (d) failure to remove the load from the truck; (e) failure of the decedent to remove himself from a place of obvious danger; (f) failure to go or send some member of the crew to the rear of such truck to warn approaching motorists of the presence of the truck thereon.

It is urged that the leaving of the truck partly upon the pavement was in violation of section 39-1154, Comp. St. Supp. 1931, which, so far as material, provides: "(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of said highway. * * * (c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

The statute by an express exception does not apply to a vehicle which is disabled while on the paved or improved or main traveled portion of any highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position. In the case of *Grubbs v. Grayson,* 165 Wash. 548, it was

said by that court, in construing a statute very similar to the one under consideration: "The statutes are not violated if there is proper excuse or a necessity for stopping an automobile upon the highway, and a reasonable effort is made to get it entirely off the traveled portion of the road or as nearly so as circumstances will permit." See, also, *Menge v. Manthey,* 200 Wis. 485.

Under the evidence in this case we cannot say, as a matter of law, that the decedent was guilty of contributory negligence in not removing the truck entirely off the pavement.

The statutes relating to the equipment and display of lights on trucks of the kind involved herein are sections 39-1122 and 39-1165, Comp. St. Supp. 1931. These statutes provide, in substance: Every motor vehicle, including road rollers, road machinery or farm tractors having a width including the load of 80 inches or more shall display during the period from one-half hour after sunset until one-half hour before sunrise and at all other times when there is not sufficient light to render such vehicle clearly discernible, at the rear of such motor vehicle, a red light located at a sufficient distance above the tail light of such vehicle as not to be confused therewith and visible under normal atmospheric conditions for a distance of 300 feet to the rear of said vehicle. Comp. St. Supp. 1931, sec. 39-1122. Whenever the load of any vehicle shall extend more than 4 feet beyond the rear there shall be displayed at the end of such load a red flag not less than 12 inches in length and width, except that between one-half hour after sunset and one-half hour before sunrise there shall be displayed at the end of any such load a red light plainly visible under normal atmospheric conditions at least 200 feet to the rear of such vehicle. Comp. St. Supp. 1931, sec. 39-1165.

It is insisted that the failure to display lights upon the truck and at the rear of its load, as required by these statutes, was negligence *per se.* The law is well settled by the decisions of this court that a violation of statutes

regulating the use and operation of motor vehicles upon the highways is not negligence *per se*, but evidence of negligence which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby. *Stevens v. Luther*, 105 Neb. 184; *Dorrance v. Omaha & C. B. Street R. Co.*, 105 Neb. 196; *Thomas v. Rasmussen*, 106 Neb. 442; *Taylor v. Koukal*, 107 Neb. 409; *Burkamp v. Roberts Sanitary Dairy*, 117 Neb. 60.

In the case of *Taylor v. Koukal, supra*, we held that the violation of a statute requiring lights to be displayed on motor vehicles in use during the period from one hour after sunset to one hour before sunrise was not negligence in itself. The same rule is also announced in *Burkamp v. Roberts Sanitary Dairy, supra*. The failure on the part of the deceased to have displayed upon the truck and its load lights as required by the statutes under consideration was not negligence in itself, but evidence of negligence to be considered with all the other facts and circumstances in evidence in determining whether the deceased, in fact, was guilty of negligence in that regard.

It is contended by the appellees that the failure to display red lights, as required by these statutes, was gross negligence on the part of the deceased. In support of this contention we are cited to the cases of *Giles v. Welsh*, 122 Neb. 164, and *Monasmith v. Cosden Oil Co.*, 124 Neb. 327. In the latter case we said: "Leaving an unlighted vehicle on highway, on dark night, without any warning, constitutes gross negligence, within the meaning of the comparative negligence statute." The rule announced in those cases does not apply to the facts in this case. The facts in each of the cases show that there were no lights whatever upon the motor vehicles left upon the highways, or any means taken to warn approaching travelers upon the highway of their presence.

Under all the facts in this case, we cannot say that the decedent was guilty of negligence, as a matter of law, in not either going himself or sending some member of

the crew to the rear of the truck to warn motorists approaching from the rear of its presence, or in not removing the pipes from the truck, or in remaining in the place in which he did and not attempting to seek a place of safety. Whether the deceased in all of these matters did or omitted to do what a reasonably prudent man would have done or would not have done under the same or similar circumstances or conditions was a question for the jury. From the facts different minds might reasonably draw different conclusions. From a careful examination of the evidence, we are convinced that the questions of negligence and contributory negligence and whether the deceased was guilty of such contributory negligence as would bar a right of recovery under the comparative negligence statute were issues which should have been submitted to the jury for their consideration.

It is urged by counsel for appellee Cudahy Packing Company that, even if the action of the trial court in directing a verdict in behalf of the defendant Poesch cannot be sustained, its action in directing a verdict in favor of the packing company must be sustained on the ground that the defendant Poesch was not at the time of the accident in the execution of his master's business or acting within the scope of his employment. The contention is that at the time of the accident he was on his way to his home to spend the night for his own convenience. The evidence shows that the defendant Poesch was employed by his codefendant, Cudahy Packing Company, on the 13th day of July, 1931, under a written contract, which, as far as material, provides: "Said employee has this day entered the employ of the said employer to work for said employer from week to week in such capacity and in such manner as said employer may from time to time direct at a salary of $31.50 per week and actual traveling expenses while away from his headquarters town on company business."

The duties of the defendant Poesch were to sell meat, collect accounts, and make adjustments for the company.

His home and headquarters were at Scottsbluff. He worked under the directions of the sales manager for the company, who mapped out his territory. Under the directions of the sales manager he was required to cover his territory each week. The territory included the city of Scottsbluff and the towns west to Wheatland, Wyoming. Under the direction of the company he was required on Wednesday morning of each week to leave Scottsbluff and work as far west as Gurnsey by Wednesday night; Thursday he would go to Wheatland, Wyoming, and back to Torrington, Wyoming, and make the towns back to Scottsbluff. The accident involved occurred on one of his regular trips. His contract with the company created the necessity for travel. To make his territory, as required, the use of an automobile was necessary. Under arrangements with the company he used his own (which he was using on the night of the accident) for which he was required to furnish oil and gas and to pay for its upkeep. For the use of his automobile in the business of the company he was paid 5 cents a mile and in addition thereto he was allowed traveling expenses for meals, hotel bills and telephone expense. During the time of his employment up to the time of the accident he had continually used his automobile in the business of the company, using no other means to make his territory. He occasionally carried samples for the company and at the time of the accident had some bacon in his car, also two or three cartons of cheese which he had taken in on adjustments for the company and which he contemplated reselling for the company. At the time of the accident he was taking this merchandise to Scottsbluff.

On the day of the accident he was returning home after having covered the western part of his territory. Mitchell was the last town he was to work before returning to Scottsbluff. When he arrived at Mitchell on this particular trip the stores were closed so that he was unable to work the town that night. His instructions from the sales manager were to cover the territory with the least

possible expense, and when he was close to Scottsbluff and the expense of going there would be less than staying in some outside town he was to use his own judgment as to whether he should stay in such town or come to Scottsbluff and go back the following day and finish his work there. He had done this at least twice each month before the time of the accident. Under these instructions from his employer he could have stayed in Mitchell that night and worked the town the next morning and the company would have paid his expenses. The expense of staying in Mitchell that night would be from $2 to $2.50 and the expense of coming home and returning to Mitchell in the morning would be about $1. The only witness called by the plaintiff upon this question was the defendant Poesch, and in addition to testifying to the facts set out, he stated that at the time of the accident he was on his way home on a trip for his own convenience so that he might be at home that night.

The general rule of law applicable to this class of cases is accurately and concisely stated in *Stone v. Hills,* 45 Conn. 44, 29 Am. Rep. 635, and is as follows:

"For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible."

Whether the act was done in the execution of the master's business, within the scope of his employment, is a question of fact. The rule cannot aid in the determination of the fact. Each case must be determined with a view to the surrounding facts and circumstances, the character of the employment and the nature of the wrongful act. Whether the act was or was not such as to be within the scope of his employment is, ordinarily, one of

fact for the determination of the jury. 18 R. C. L. 795, sec. 254. "The cases which have arisen upon this subject have from the earliest times been productive of much astute and interesting discussions in courts of law, and eminent judges have differed widely in their decisions. It has always been a matter of extreme difficulty to apply the law to the ever-varying facts and circumstances which present themselves." *Rayner v. Mitchell*, Law Rep. 2 C. P. Div. 357.

Under the facts in this case, had the defendant Poesch arrived at Mitchell on the night of the accident in time to have completed his work, and when on his trip from Mitchell to Scottsbluff the accident had happened, it can hardly be questioned but what he would then have been acting within the scope of his employment and in the execution of his master's business. When he arrived in Mitchell and the stores were closed and he was unable to work the town that evening, he had the authority from his employer to either stay in Mitchell that night or return to Scottsbluff and return to Mitchell the next morning. He was to cover his territory at the least possible expense. To keep down the expense he was required not to stay overnight in Mitchell but to go on to Scottsbluff and return to Mitchell the next morning. Whether he may have had the option to go to his home or stay at Mitchell overnight can make no difference. In either event he was acting on the instructions of his employer, and his act in going from Mitchell to Scottsbluff under the circumstances disclosed by the evidence would support a finding that he was acting within the scope of his employment and in the execution of his master's business.

The argument that he was not so engaged is based upon his testimony that the trip from Mitchell to Scottsbluff was made for his own convenience so that he might be at home that night. This was but a conclusion of the witness. The other facts and circumstances in evidence would warrant a different conclusion. Although the trip might have been taken in part for his own convenience

and his desire to be home that evening, we think the facts shown by the record presented a question for the jury.

Error is also assigned in the exclusion from evidence of a plat of the scene of the accident. From the view we have taken of the case we do not find it necessary to give consideration to this assignment.

For the reasons given, the judgment is reversed and the cause remanded for a new trial.

REVERSED.