MARVIN C. NIEMEYER, APPELLEE, v. CLARENCE W. FORBURGER, APPELLANT, IMPLEADED WITH CORNHUSKER HEATING AND AIR-CONDITIONING, APPELLEE.

112 N. W. 2d 276

Filed December 8, 1961. No. 35051.

*Lester L. Dunn* and *Thomas J. Gorham,* for appellant.

*Robert R. Camp,* for appellee Niemeyer.

*Paul E. Haberlan,* for appellee Cornhusker Heating and Air-Conditioning.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action at law brought by Marvin C. Niemeyer, plaintiff, against Clarence W. Forburger, hereinafter referred to as defendant, and Cornhusker Heating and Air-Conditioning, also a defendant, to recover damages for injuries sustained by the plaintiff while working in a house being built by the defendant when a series of steps collapsed causing the plaintiff to fall and become injured. At the close of the plaintiff's case the defendant moved for an order to dismiss the plaintiff's cause of action, which motion was overruled. At the conclusion of all of the evidence the defendant moved to dismiss the plaintiff's cause of action and for a directed verdict. These motions were overruled. The plaintiff moved for a directed verdict, which was overruled. The jury returned a verdict in favor of the plaintiff, fixing the amount of his recovery in the sum of $5,000. The defendant filed a motion for new trial, which motion was overruled. Defendant perfected appeal to this court.

The plaintiff's petition in substance alleges that on November 18, 1959, he was an employee of Cornhusker Heating and Air-Conditioning, and had assisted in the installation of a central heating and air-conditioning system in a residence being constructed by the defendant in the city of Lincoln; that on that date the plaintiff returned to the premises owned by the defendant for the purpose of adjusting the heating system; and that as the plaintiff stepped on the top step of a stairway leading from the garage level to the basement, the stairway collapsed and the plaintiff fell to the cement floor of the basement receiving injuries which were proximately caused by the negligence of the defendant in the construction and maintenance of the stairway. The plaintiff charged the defendant with negligence substantially in the following particulars: (a) Failure to install and

construct said stairway in a proper and safe manner for persons properly using the same; (b) failure to maintain said stairway in a proper and safe manner; and (c) failure to warn the plaintiff of the alleged unsafe and dangerous condition of the stairway when the defendant knew or, in the exercise of ordinary care, should have known of said unsafe and dangerous condition. The petition detailed the injuries received by the plaintiff due to the accident, the extent of the same, and the expenses relative thereto, including loss of wages.

The defendant Cornhusker Heating and Air-Conditioning in its answer set forth certain payments made to the plaintiff in compliance with the Nebraska Workmen's Compensation Act, and prayed that it be subrogated to the rights of the plaintiff in the amount of $546.91.

The defendant's answer was a general denial of all of the allegations of the plaintiff's petition.

The record discloses that on November 18, 1959, Forburger was the owner of property located at 2815 South Forty-second Street in Lincoln, Nebraska, was building a house on such property for his own and his family's use, and had hired Cornhusker Heating and Air-Conditioning to do some furnace and air-conditioning work on the premises.

The plaintiff testified that he was a sheet metal worker whose work consisted of the installation of ducts, fans, air-conditioning, or anything that has to do with metal; that he installed a furnace at 2815 South Forty-second Street a week prior to November 18, 1959; and that the house being constructed there was a split-level type. He stated that this meant that from the ground level there was a half level up to the living part of the house and another half level up to the sleeping quarters, and also from the ground level there was a half level down to the basement. He testified that he was instructed by his employer, Cornhusker Heating and Air-Conditioning, to return to the premises to

finish some duct work in the garage part of the house which had been taken down on account of some overhead doors, and to check the furnace and air-conditioning; that he noticed some steps in place from the basement level up to the first-floor level; that he had occasion to walk over them; that when he negotiated these steps he went from the garage level to the first-floor level; that he walked up the steps to plug in a dropcord on the first-floor level; that he then walked down to the garage level, finished his work, and walked back up the steps to the first floor to unplug the drop-cord and get a set of plans; and that as he stepped on the first step below the first-floor level the stairway collapsed and he fell to the basement level.

On cross-examination the plaintiff testified that before November 18, 1959, he had been on the premises 3 full working days; and that from the garage level to the first floor there was a plank to walk on at that time.

The defendant testified that the steps were reinstalled by Kermmoade who suggested that the steps would be better than the 2 x 6 plank, and would be safer. Kermmoade was there for the purpose of cleaning up after the workmen because they had left considerable debris. On cross-examination this witness testified that he helped Kermmoade to lift the stairs, but that Kermmoade nailed the steps, and he saw Kermmoade do it; that he did not inspect the stairway after the installation; that he was the president of the Forburger Stone Company; that Kermmoade was an employee of the company; that the payroll was kept in the office of the company; that he suggested that they might set up the steps temporarily; and that he helped Kermmoade move the steps because they were too heavy for one man.

Ben U. Kermmoade testified that he had occasion to go to the premises at 2815 South Forty-second Street and help clean up debris; that he had also helped in putting some sheeting on the roof; that he was ordered

to go to the premises by the defendant; that when he was on the premises to clean up the debris, he observed some steps lying on the garage floor; that he asked the defendant why they didn't reinstall the stairs; and that the defendant thought it was all right and would be safer to climb than the plank that they had in place. Kermmoade further testified that he and the defendant lifted the stairs and put them in place; that the steps were nailed with three nails, two on one side and one on the other side of the steps; and that all of his compensation came from the defendant.

Robert C. Newell testified that his business was building homes and he had been in that business for approximately 32 years; that he had a contract with the defendant to frame and finish a house at 2815 South Forty-second Street in Lincoln; that during his work on the house he had occasion to construct a series of steps, or a stairway, which was used to enter the basement or the main floor from the garage level; and that the finished set of steps consisted of 1 x 12s on the side, rabbeted out for one $1\frac{1}{8}$ inch straight tread with $\frac{3}{4}$ square riser, a finished set of steps. They were fastened to the framework on the side of the building. The building was cut out and the framework was fit in snugly. They used finishing nails, which were 8-penny nails about $2\frac{1}{4}$ inches in length. At the top part of the stairway they used six nails on each side, and at the bottom there were another six, and if there was any place to fasten the steps in between, nails would be used in that place. A series of 24 finishing nails was used. He was helped in the installation of the stairway by George Gary who was working with him at the time. Subsequently the stairs were removed and placed on the garage floor. This witness further testified that he was working on the premises on November 18, 1959; that he saw the plaintiff working there, and saw him fall; that he first observed the plaintiff as he was proceeding through a narrow hallway leading to the steps;

and that he started down the steps, the steps collapsed, and he fell. This witness inspected the steps, or the stairway, immediately after the accident. He found that there were two finishing nails at the top of the stairs on the west side and one finishing nail on the east side of the steps; that there were no other nails anyplace in the series of steps to hold them to the sides; that these nails would have to go through a 3/4 inch thickness in order to fasten on the siding; that the 8-penny nails, which were 2 3/4 inches long, extended 1 3/4 inches into the sidings where they were fastened; that these were temporary stairs; and that more nails should have been used on these stairs.

George Gary testified that he worked with Newell on the construction of the Forburger house; that he was standing at the head of the stairs; that he saw the plaintiff on the stairway and saw him fall onto the cement floor; that the stairs gave way; and that he and Newell looked at the stairs, and the steps were nailed with three 8-penny nails, two nails on one side and one nail on the other.

There is also evidence of Kermmoade to the effect that 10-penny nails were used, which would be longer than those testified to by Newell and Gary.

The defendant assigns as error that the trial court erred in refusing to dismiss the plaintiff's action against the defendant Forburger. This is based upon the proposition that Kermmoade was an employee of Forburger Stone Company, was paid by it, and was not an agent of Forburger at the time he was called to the house to clean up the debris. The defendant also contends that the evidence is insufficient to show negligence on his part; that there was no duty owed by him to the plaintiff; and that there was no agency relationship between himself and Kermmoade. We deem the following to be applicable.

Negligence is the doing of something which an ordinarily prudent person would not have done under the

same or similar circumstances, or the failure to do something which an ordinarily prudent person would have done under the same or similar circumstances. Burhoop v. Brackhan, 164 Neb. 382, 82 N. W. 2d 557.

Ordinary care is that amount or degree of care which common prudence and a proper regard for one's own safety and the safety of others would require under the circumstances shown in the evidence. See, City of Mankato v. Barber Asphalt Paving Co., 142 F. 329; Cornovski v. St. Louis Transit Co., 207 Mo. 263, 106 S. W. 51.

In 35 Am. Jur., Master and Servant, § 161, p. 590, it is said: "Where the premises on which the stipulated work is executed remain under the control of the principal employer while the contract is in the course of performance, a servant of the contractor is in the position of an invitee, and as such entitled to recover for any injury which he may sustain by reason of the abnormally dangerous condition of the premises or plant thereon, if the evidence shows that the principal employer was, and the servant was not, chargeable with knowledge, actual or constructive, of the existence of that condition." See, also, Annotation, 44 A. L. R. 982-989; Annotation, 20 A. L. R. 2d 873, 899.

In Kruntorad v. Chicago, R. I. & P. Ry. Co., 111 Neb. 753, 197 N. W. 611, while the plaintiff was descending a stairway that had been erected against an embankment on the defendant's right-of-way, at a point near the intersection of Twenty-fifth and Monroe Streets in South Omaha, one of the steps gave way, causing plaintiff to fall and receive injuries. This court said: "There is much confusion from the failure of courts to distinguish between a license and an invitation, and particularly between an implied license and an implied invitation. An invitation is inferred where there is a common interest or mutual advantage, or where an owner or occupant of premises, by acts or conduct, leads another to believe the premises, or something thereon,

were intended to be used by such other person; that such use is not only acquiesced in by the owner or occupant, but is in accordance with the intention or design for which the way, place or thing was adapted or prepared or allowed to be used; while a license is implied where the object is the mere pleasure, convenience or benefit of the person enjoying the privilege." See, also, Shults v. Chicago, B. & Q. Ry. Co., 83 Neb. 272, 119 N. W. 463.

In Morse v. Gray, 166 Neb. 557, 89 N. W. 2d 842, it is said: "Invitees are those who are expressly or impliedly invited as a customer to a store. The duty of the owner toward an invitee is to exercise reasonable care to keep the premises in a safe condition. * * * A possessor of land is subject to liability for personal injuries to business visitors by a natural or artificial condition thereon if he knows, or by exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them." See, also, Restatement, Torts, § 343, p. 938.

In Dafoe v. Grantski, 143 Neb. 344, 9 N. W. 2d 488, quoting from LaFleur v. Poesch, 126 Neb. 263, 252 N. W. 902, this court stated: " 'The general rule of law applicable to this class of cases is accurately and concisely stated in Stone v. Hills, 45 Conn. 44, 29 Am. Rep. 635, and is as follows: "For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible; for acts which are not within these conditions the servant alone is responsible."

" 'Whether the act was done in the execution of the master's business, within the scope of his employment,

is a question of fact. The rule cannot aid in the determination of the fact. Each case must be determined with a view to the surrounding facts and circumstances, the character of the employment and the nature of the wrongful act. Whether the act was or was not such as to be within the scope of his employment is, ordinarily, one of fact for the determination of the jury. 18 R. C. L. 795, sec. 254.' LaFleur v. Poesch, 126 Neb. 263, 275, 252 N. W. 902. See, also, 22 A. L. R. 1404; 45 A. L. R. 482; 68 A. L. R. 1055; 80 A. L. R. 727; 122 A. L. R. 863."

In the instant case the evidence discloses that Kermmoade was instructed to go to the premises owned by the defendant to do clean-up and carpenter work. The defendant's testimony is to the effect that he instructed Kermmoade to go to the premises. In fact, he took Kermmoade to the premises. They both helped in the installation of the stairway with Kermmoade nailing the steps of the stairway in the manner heretofore mentioned. The defendant observed him as he was doing it, and the defendant accepted the work as performed by Kermmoade. This work was within the scope of Kermmoade's employment in helping with the building of the home for the defendant. Kermmoade's work was warranted by the express authority conferred upon him.

The same rules of negligence apply to Kermmoade as to the defendant. Kermmoade, by not fastening the steps with sufficient nails to hold them in place and by placing the steps into position for temporary use, was aware that they were not right and that the tread would tilt inward. By such action the jury could well find that Kermmoade did not act as an ordinarily prudent person would have done under the same or similar circumstances.

Kermmoade's acts were within the express and implied authority granted him by the defendant in the execution of the defendant's business, and within the scope of Kermmoade's employment as he was being

instructed to perform; and for the acts of Kermmoade as a servant, the defendant is responsible and is liable to others who are harmed by the negligent acts of his servant.

The evidence was sufficient to submit the case to the jury. The defendant's assignment of error cannot be sustained.

The defendant assigns as error that the trial court erred in refusing to allow the defendant to introduce exhibit No. 9 showing the amount of compensation, hospital, and medical expense paid by Employers Mutual Casualty Company instead of Cornhusker Heating and Air-Conditioning who is not the real party at interest so far as this action is concerned.

Section 48-118, R. R. S. 1943, provides in part: "Where a third person is liable to the employee * * * for the injury * * * the employer shall be subrogated to the right of the employee * * * against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee * * * but such employer may recover any amount which such employee * * * should have been entitled to recover. * * * Provided, however, that nothing in this section or act shall be construed to deny the right of an injured employee * * * to bring suit against such third person in his own name * * * based upon such liability, but in such event an employer having paid or paying compensation to such employee * * * shall be made a party to the suit for the purpose of reimbursement, under the above provided right of subrogation, of any compensation paid."

This section does not prevent an employee from suing a third party responsible for his injury in his own name, but requires that the employer, having paid compensation, be made a party. See Oliver v. Nelson, 128 Neb. 160, 258 N. W. 69.

In Goeres v. Goeres, 124 Neb. 720, 248 N. W. 75, this court referred to what is now section 48-118, R. R. S.

1943, and stated: "* * * statutes which allow the employee to recover compensation from the employer and also to sue the tort-feasor, but, in case his recovery from the tort-feasor is greater than the amount paid in compensation, the employer is subrogated to that extent, which is the rule in Nebraska. The rights of the employee or his personal representative are not two separate remedies for the same wrong, for the right against the tort-feasor is a common-law remedy calculated to give damages for an injury caused by a wrong-doer. The right for compensation against the employer who is guilty of no wrong is not intended to make whole the injury to the employee, for compensation depends upon the fact that one was injured while in employment, and is measured, not by the extent of the injury suffered, but by the amount of the employee's weekly wages.

"When the accident occurs, the employee is sometimes forced by financial circumstances to take immediate compensation, and this does not, under the Nebraska law, deprive him, because of this necessity, of recovering from the tort-feasor his larger common-law liability." See, also, Annotation, 67 A. L. R. 249.

We find no merit to the defendant's contention that exhibit No. 9 should have been admitted in evidence. The trial court was correct in rejecting this exhibit.

The defendant predicates error on the part of the trial court in refusing to give instructions Nos. 1 and 2 requested by the defendant.

It is a well-established rule that it is not error to refuse a requested instruction if the substance of the requested instruction is covered by other instructions given. See Johnson v. Union P. R. R. Co., 111 Neb. 196, 196 N. W. 140.

The defendant does not challenge any of the instructions given by the trial court.

Instructions given to a jury must be construed together and if, when considered as a whole, they properly

state the law it is sufficient. Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831.

We conclude that the defendant's assignment of error relating to requested instructions offered but refused by the trial court is without merit.

The defendant assigns as error that the amount awarded the plaintiff was excessive based upon the time lost, and hospital and medical expense involved.

Dr. Lynn E. Sharrar testified that he examined the plaintiff on November 18, 1959, at St. Elizabeth Hospital; that the plaintiff had five fractured ribs; that the plaintiff was having severe pain due to his injury, and one of his ribs, the sixth one, was protruding in the wall of the left chest; that an operation was performed on the tenth day after the injury to remove a portion of the rib that was protruding into the skin; that there still remains a protrusion of the rib into the skin area below the one removed; that with a multiple fracture the plaintiff is bound to have muscle injury and chest injury, that is, injury to the tissue or to the frame of the chest, especially if he has to do stooping or reaching he will have moderate discomfort; and that he characterized plaintiff's injury as permanent in nature.

Dr. Paul Goetowski examined the plaintiff on February 23, 1961, 15 months after the accident and injury, and found upon palpation that there was a sharp protuberance from an old fracture that was quite tender, and that palpation in the spaces between the ribs indicated tenderness. He testified that the plaintiff would have radiation of the pain in his chest to other parts of his body, especially upon coughing or stretching.

Louis Meinecke was a fellow worker of the plaintiff and worked with him up until about 4 weeks prior to the date of trial on March 15, 1961. He testified that during this time he observed that the plaintiff was favoring his left side and seemed to have a lot of pain every once in a while and would have to have some assistance.

"A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." Husak v. Omaha Nat. Bank, 165 Neb. 537, 86 N. W. 2d 604.

The question of the amount of damages is one solely for the jury, and its action in that respect may not be disturbed on appeal when there is no showing of passion, prejudice, mistake, or that the jury disregarded the evidence or controlling rules of law.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.